UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOMMER TOLLES,

    Plaintiff,

Case No. 19-10402

v.

Honorable Nancy G. Edmunds

MID-MICHIGAN VISITING NURSE
ASSOCIATION D/B/A MID-MICHIGAN
HOME CARE,

    Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [11]**

Plaintiff Sommer Tolles brings gender-based wage discrimination claims against her former employer, Defendant Mid-Michigan Visiting Nurse Association d/b/a Mid-Michigan Home Care, alleging it violated Michigan's Elliot-Larsen Civil Rights Act ("ELCRA") (Count I) and the Equal Pay Act ("EPA") (Count II).  The matter is now before the Court on Defendant's motion for summary judgment.  (Dkt. 11.)  Plaintiff filed a response to Defendant's motion, arguing this is an "excellent claim" under the EPA but not addressing her ELCRA claim.  (Dkt. 14.)  Defendant filed a reply.  (Dkt. 15.)  The Court held a hearing on the motion on February 12, 2020.  For the reasons discussed below, the Court GRANTS Defendant's motion for summary judgment on Plaintiff's ELCRA claim, but DENIES the motion with regard to her EPA claim.

**I.    Background**

    **A.    Overview**

1

Plaintiff started working for Defendant as a pharmacy technician in 2013. After having worked for Defendant for about four and a half years, Plaintiff found out that one of her co-workers, Anthony Wreggelsworth, a male pharmacy technician who had been working for Defendant for only a few months, was being paid at a higher rate than she was. At the time, Plaintiff was earning $13.59 per hour, while Wreggelsworth was making $14.50 per hour. After requesting and subsequently being denied a pay raise, she resigned.

**B.     Facts**

Plaintiff graduated from high school in 2000, began working as a pharmacy tech intern in 2003, and obtained her pharmacy technician certificate in 2004. (*See* dkt. 14-2, PgID 825.) During her interview for the position as a pharmacy technician with Defendant in 2013, Plaintiff requested a salary of $13.50 per hour, which was the same salary she was making at her previous job.[1] (*Id.*; dkt. 11-6, PgID 332.) Plaintiff received an offer letter from Heidi Lewis, Defendant's recruitment manager, offering her the position with a starting salary of $12.90 per hour. (*See* dkt. 14-2, PgID 825.) Plaintiff called her interviewer and explained that this was less than what she was currently making, but was told she could not be offered any additional money. Plaintiff accepted the offer and began working for Defendant. Defendant states that Plaintiff's performance was initially below expectations and she therefore received minimal merit increases pursuant to Defendant's Pay-for-Performance compensation system.

---

[1] Plaintiff's job application incorrectly stated that her current salary was $12.50 per hour. (Dkt. 11-6, PgID 331.)

2

In May 2017, another female pharmacy technician working for Defendant, Lori Gilmore, left, creating an open position. Gilmore had been working as a pharmacy technician since the late 1990s, earned her pharmacy technician certificate in 2008, and was employed by Defendant since 2012. (*See* dkt. 14-2, PgID 825.) She was making $14.68 per hour at the time. Defendant avers that it recognized that Gilmore's replacement was likely going to be offered a higher salary than Plaintiff was earning and, thus, conducted a pay equity analysis of Plaintiff's wages but found her salary appropriate due to her low performance scores and disciplinary history.

Defendant offered Gilmore's position to Wreggelsworth with a starting salary of $14.50 per hour. Wreggelsworth had graduated from high school in 2010, began working as a pharmacy technician in 2011, and earned his pharmacy technician certificate in 2012. (Dkt. 11-13, PgID 643-44.) He was making $15.50 per hour at his previous job.

In July 2017, Plaintiff found out that Wreggelsworth was being paid at a higher rate than she was. Plaintiff met with her supervisor, Cindy Thornton, and shared her concerns regarding the difference in pay. On July 26, 2017, Plaintiff received notice that she would not get an immediate pay adjustment and would have to wait until October to get a merit raise. (*See* dkt. 11-6, PgID 548.) After following-up and being told that she would not receive an out-of-cycle pay adjustment, Plaintiff resigned. She filed an EEOC complaint in August 2017, alleging gender discrimination pursuant to Title VII and the Equal Pay Act.

In September 2017, a woman by the name of Abigail Mercier was hired to replace Plaintiff. Mercier had been a certified pharmacy technician since 2010. (Dkt.

11-14, PgID 667-68.) She was initially offered a starting salary of $13.60 an hour. (*Id.* at PgID 659.) However, she declined that offer and was subsequently offered $14.00 per hour. Lewis sent an email to Thornton informing her: "I had to negotiate with her a bit - in the end she accepted $14 - this is less than where Anthony is at (he's at $14.50)." (*See* dkt. 14-3, PgID 895.)

In March 2018, Defendant hired another female pharmacy technician by the name of Rachel Todd with a starting salary of $16.50 per hour. Todd had been a pharmacy technician since 1998. (Dkt. 14-3, PgID 1012.) In what Defendant describes as a pay equity analysis during the hiring process but Plaintiff describes as a "cover-up," Thornton sent the following email:

> Based on the information below, I'd like to increase Abby [Mercier] to $14.50. Christie has agreed as well. We had some issues occur in this department regarding wage concerns. Heidi Lewis may be able to fill you in on the details as well. Can you let me know if this is a possibility and if so, when could I speak with Abby about it taking affect? [sic]

(*See* dkt. 15-1, PgID 1193.) Mercier was eventually approved for the pay adjustment and her salary was increased to $14.50 per hour. Thornton's testimony indicates that the $14.50 figure was used to bring Mercier's pay to par with that of Wreggelsworth. (*See* dkt. 11-5, PgID 236.) Plaintiff filed suit against Defendant on June 13, 2018, in state court, but Defendant removed the action to this Court.

## II. Legal Standard

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable

4

inferences in its favor.'" *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

The moving party bears the initial burden "of establishing the 'absence of evidence to support the nonmoving party's case.'" *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once the moving party has met its burden, the nonmoving party 'must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor.'" *Id.* at 839 (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)).

## III. Analysis

### A. Plaintiff's ELCRA Claim

Plaintiff alleges that Defendant discriminated against her based on her gender in violation of Michigan's Elliot-Larsen Civil Rights Act. Defendant argues it is entitled to summary judgment on this claim for a number of reasons. Plaintiff does not, however, address any of those arguments in her response to Defendant's motion and, thus, this

claim is deemed abandoned.[2] *See Briggs v. Univ. of Detroit-Mercy*, 611 F. App'x 865, 870 (6th Cir. 2015). Moreover, under Michigan law, courts are required to enforce a shortened period of limitations in an unambiguous contractual provision. *See Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 31 (Mich. 2005). Here, Plaintiff agreed upon a limitations period of 180-days when she signed her employment application, (*see* dkt. 11-6, PgID 492), but she did not bring this lawsuit until approximately ten months after the events giving rise to her claim. Thus, Plaintiff's ELCRA claim is time-barred, and the Court will grant Defendant's motion for summary judgment as to this claim.

### B. Plaintiff's EPA Claim

Plaintiff also alleges that Defendant's conduct violated the Equal Pay Act. Defendant responds by arguing that any wage differential was based on legitimate, non-gender factors, and that Plaintiff has not demonstrated pretext.

"The EPA prohibits employers from paying an employee at a rate less than that paid to an employee of the opposite sex for performing equal work." *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006) (citing 29 U.S.C. § 206(d)(1)). To establish a prima facie case of wage discrimination under the EPA, a plaintiff "must show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Id.* at 359 (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). A plaintiff need only show that the jobs held by the female and male employees are "substantially equal," not that "the skills and

---

[2] Plaintiff's counsel acknowledged at oral argument that Plaintiff has conceded her ELCRA claim.

6

qualifications of the individual employees holding those jobs" are equal. *Id.* at 362-63 (internal quotation marks and citation omitted). "[P]roof of discriminatory intent is not required to establish a prima facie case under the Equal Pay Act." *Id.* at 360 (internal quotation marks and citation omitted).

Once a plaintiff has made out a prima facie case, an employer can only escape liability under the EPA by proving that the wage disparity was due to: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *See* § 206(d)(1). The defendant bears the burden of proof with respect to these four affirmative defenses. *Beck-Wilson*, 441 F.3d at 360. "The burden of proving that a factor other than sex is the basis for a wage differential is a heavy one." *Id.* at 365 (internal quotation marks and citation omitted). "Unless the factor of sex provides *no* part of the basis for the wage differential, the requirements for the defense are not met." *Id.* To survive summary judgment, "the EPA plaintiff need not set forth evidence from which a jury could infer that the employer's proffered reason for the wage differential is pretextual." *Id.* Rather, the defendant "must demonstrate that there is no genuine issue as to whether the difference in pay is due to a factor other than sex." *Id.* Only if and when the defendant meets this burden does the burden of proof shift back to the plaintiff to "produc[e] evidence creating a triable issue of fact that the reasons proffered by [the defendant] are pretextual." *Balmer v. HCA, Inc.*, 423 F.3d 606, 613 (6th Cir. 2005), *abrogated on other grounds by Fox v. Vice*, 563 U.S. 826 (2011) (internal quotation marks and citation omitted).

Defendant does not dispute that Plaintiff has established a prima facie case under the EPA, but instead argues that the difference in pay was attributable to legitimate, non-gender factors. More specifically, Defendant argues that Plaintiff's and Wreggelsworth's initial wages were based on their relevant experience and previous wages.[3] Defendant also avers that that its merit pay program justifies the wage differential, because Plaintiff did not qualify for several merit raises during her time of employment.

A factor an employer relies upon to justify a pay disparity must be one that "was adopted for a legitimate business reason." *EEOC v. J.C. Penney Co.*, 843 F.2d 249, 253 (6th Cir. 1988). The Sixth Circuit has found experience a legitimate factor other than sex for purposes of the EPA. *Balmer*, 423 F.3d at 612 (citations omitted). Also, "[c]onsideration of a new employee's prior salary is allowed as long as the employer does not rely solely on prior salary to justify a pay disparity." *Id.* at 612 (citing *Irby v. Bittick*, 44 F.3d 949, 955 (11th Cir. 1995) ("If prior salary alone were a justification, the exception would swallow up the rule and inequality in pay among genders would be perpetuated.")). A factor other than sex cannot be "an illusory, post-event justification for unequal pay for equal work." *See Odomes v. Nucare, Inc.*, 653 F.2d 246, 252 (6th Cir. 1981) (internal quotation marks and citation omitted).

Despite Defendant's argument that Wreggelsworth's starting salary was based in part on his previous experience, Plaintiff argues the she was the more experienced

---

[3] Defendant also initially cited to negotiation as a factor other than sex that justifies the difference between Plaintiff and Wreggelsworth's starting salaries. However, Plaintiff argues that she is the one who negotiated her salary, while Wreggelsworth did not. Because Defendant did not rely on this factor in its motion for summary judgment, there is no need to address this issue.

candidate at the time of hire. She notes that Defendant's assertion that she had seven and a half years of experience at the time of hire was based upon her licensure date, but there is evidence that Defendant calculated the number of years of experience based on when the individual started acting as a pharmacy technician. (*See* dkt. 11-4, PgID 172.) According to that metric, Plaintiff had almost ten years of experience at the time she was hired, while Wreggelsworth had six years of experience at the time of his hire.[4] Thus, Defendant has not proven that experience justifies the pay differential.[5]

This leaves previous wages as the sole justification for the pay disparity, but Defendant cannot meet its burden by relying on this factor alone. *See Balmer*, 423 F.3d at 612. Therefore, the Court finds that there is a genuine issue of fact as to whether the difference in starting salaries was due to a factor other than sex. Thus, even if Defendant is correct that Plaintiff did not qualify for several merit raises during her time of employment based on her job performance and disciplinary history, Defendant has not proven that the factor of sex provided *no* part of the basis for the wage differential. The fact that Mercier (a female) was hired after Wreggelsworth at a rate lower than he was earning further bolsters the Court's conclusion that there is an issue of fact as to whether sex played a role in the wage differential. Defendant's assertion that Mercier was hired pursuant to an internal transfer system that did not apply to Plaintiff or

---

[4] Plaintiff also avers that she had home infusion experience, a preferred criterion for the position, while Wreggelsworth did not.

[5] To the extent Defendant asserts that Wreggelsworth was hired at a below-market rate while Plaintiff was hired at an above-market rate but dropped below the market rate due to her job performance, Defendant itself acknowledges that it did not develop its current pay structure and scales until after Plaintiff was hired in 2013. (*See* dkt. 11-2, PgID 135-37.) Thus, Defendant cannot meet its burden by comparing two different scales.

Wreggelsworth does not alter this conclusion, especially since Mercier's salary was later increased to match that of Wreggelsworth.[6]  Because Defendant has not met its burden of proving an affirmative defense to Plaintiff's claim, Plaintiff is not required to produce evidence of pretext.  *See id.* at 613.  In sum, Plaintiff's claim under the EPA survives Defendant's motion for summary judgment.

## IV. Conclusion

For the above-stated reasons, Defendant's motion for summary judgment is GRANTED as to Plaintiff's ELCRA claim but DENIED as to Plaintiff's EPA claim.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: February 24, 2020

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 24, 2020, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager

---

[6] Defendant also notes that Wreggelsworth was hired at a wage lower than Gilmore (a female) had been earning, and that Todd (a female) was hired at a rate higher than Wreggelsworth was making.  However, considering the evidence that both Gilmore and Todd were substantially more experienced than Wreggelsworth, this argument is of no avail to Defendant.